**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

TIMOTHY C. HOLSWORTH, individually and
on behalf of all others similarly situated,

       *Plaintiff,*

    -against-

BPROTOCOL FOUNDATION, EYAL
HERTZOG, YEHUDA LEVI, GUY
BENARTZI, and GALIA BENARTZI

       *Defendants.*

Case No.: 1:20-cv-02810-AKH

Honorable Alvin K. Hellerstein

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE COMPLAINT

QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue
New York, New York 10010
212-849-7000 (voice)
212-849-7100 (fax)

*Attorneys for Defendants BProtocol*
*Foundation, Eyal Hertzog, Yehuda Levi, Guy*
*Benartzi, and Galia Benartzi*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ....................................................................................3

PROCEDURAL HISTORY.......................................................................................5

ARGUMENT ............................................................................................................6

I.    PLAINTIFF LACKS STANDING TO BRING THIS SUIT BECAUSE HE HAS
      SUFFERED NO INJURY FROM PURCHASING BNT....................................6

II.   THIS COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE
      BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE
      GRANTED .........................................................................................................8

      A.    The United States' Securities Laws Do Not Apply To Plaintiff's
            Transactions. .............................................................................................9

      B.    Defendants Were Not A "Statutory Seller" Under Section 12(a)(1). ....12

      C.    Defendants Are Not Liable Under Wisconsin's Blue Sky Law. ............14

      D.    Because Plaintiff's Section 15 Claim Is Derivative Of The Section
            12(a)(1) Claim, It Fails As Well. ...........................................................15

      E.    Holsworth's Claims Are Barred By The Statute Of Limitations. ...........15

            1.    Plaintiff's Federal Claims Are Untimely Under The Statute Of
                  Limitations. ...................................................................................15

            2.    Plaintiff's Blue Sky Claims Are Untimely Under The Statute Of
                  Limitations. ...................................................................................17

            3.    Plaintiff's Federal Claims Are Untimely Under The Statute Of
                  Repose. ...........................................................................................18

      F.    The Court Should Dismiss The State Blue Sky Claims.........................19

III.  IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE
      COMPLAINT WITHOUT PREJUDICE BECAUSE IT LACKS JURISDICTION
      OVER DEFENDANTS AND IS AN INCONVENIENT FORUM FOR THE
      SUIT..................................................................................................................20

      A.    This Court Lacks Jurisdiction Over Defendants....................................20

            1.    Plaintiff Fails To Establish Personal Jurisdiction Exists Over Eyal
                  Hertzog And Yehuda Levi. ............................................................21

            2.    Plaintiff Fails To Establish Personal Jurisdiction Over Galia And
                  Guy Benartzi. .................................................................................22

            3.    Plaintiff Fails To Establish Personal Jurisdiction Exists Over
                  Bancor.............................................................................................24

4.      In The Alternative, Plaintiff Fails To Establish Personal
        Jurisdiction Exists With Respect To Each Blue Sky Claim From A
        State Other Than Wisconsin. ...................................................................26

B.      This Court Should Dismiss The Action Pursuant To The Doctrine Of
        *Forum Non Conveniens*. ........................................................................26

CONCLUSION ...............................................................................................................29

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Absolute Activist Master Value Fund, Ltd. v. Ficeto*,
  2013 WL 1286170 (S.D.N.Y. Mar. 28, 2013) ............................................................. 22, 23

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012) ...................................................................................... 10

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
  2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) .......................................................... 25

*Allen v. Credit Suisse Sec. (USA) LLC*,
  895 F.3d 214 (2d Cir. 2018) ...................................................................................... 9

*In re AOL Time Warner, Inc. Secs. & "ERISA" Litig.*,
  381 F. Supp. 2d 192 (S.D.N.Y. 2004) ...................................................................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 9

*Balestra v. ATBCOIN LLC*,
  380 F. Supp. 3d 340 (S.D.N.Y. 2019) ...................................................................... 23

*Base Metal Trading Ltd. v. Russian Aluminum*,
  98 F. App'x 47 (2d Cir. 2004) .................................................................................. 28

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007) .................................................................................................. 9

*Blockchain Luxembourg S.A. v. Paymium, SAS*,
  2019 WL 4199902 (S.D.N.Y. Aug. 7, 2019) ............................................................ 21

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016) ...................................................................................... 24

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017) .............................................................................................. 18

*Carney v. Mantuano*,
  554 N.W.2d 854 (Wis. Ct. App. 1996) ...................................................................... 14

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ...................................................................................... 9

*Chew v. Dietrich*,
  143 F.3d 24 (2d Cir. 1998) ........................................................................................ 22

*Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*,
  415 F. Supp. 3d 371 (S.D.N.Y. 2019) ...................................................................... 23

*Cornwell v. Credit Suisse Grp.*,
  729 F. Supp. 2d 620 (S.D.N.Y. 2010) ...................................................................... 11

*Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.*,
    2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) ........................................................ 12

*CTS Corp. v. Waldburger*,
    573 U.S. 1 (2014) ........................................................................................... 18

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ........................................................................................ 24

*Dareltech, LLC v. Xiaomi Inc.*,
    2019 WL 3287957 (S.D.N.Y. July 22, 2019) ........................................................ 25

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) ......................................................................................... 8

*De Vito v. Liquid Holdings Grp., Inc.*,
    2018 WL 6891832 (D.N.J. Dec. 31, 2018) ........................................................ 18

*In re Deutsche Telekom AG Secs. Litig.*,
    2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ................................................. 12, 13

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
    873 F.3d 85 (2d Cir. 2017) ............................................................................. 19

*United States v. Georgiou*,
    777 F.3d 125 (3d Cir. 2015) ........................................................................... 10

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011) ........................................................................................ 21

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ................................................................................... 28, 29

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995) ................................................................................... 14, 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ........................................................................................ 21

*ICO Servs., Ltd. v. Coinme, Inc.*,
    2018 WL 6605854 (S.D.N.Y. Dec. 17, 2018) ................................. 20, 21, 23, 25

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001) ................................................... 26, 27, 28, 29

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998) ........................................................................... 21

*Langan v. Johnson & Johnson Consumer Cos.*,
    897 F.3d 88 (2d Cir. 2018) ........................................................................ 8, 20

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) ................................................................... 18

*Lewis v. Casey*,
    518 U.S. 343 (1996) ................................................................................... 7, 8

*Lopez v. Shopify, Inc.*,
    2017 WL 2229868 (S.D.N.Y. May 23, 2017) ........................................ 24, 25, 26

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).......................................................................... 6, 7

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012)..................................................................... 7

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    2012 WL 1994707 (S.D.N.Y. June 4, 2012) ........................................ 16

*Met Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)..................................................................... 21

*Milan v. Wertheimer*,
    808 F.3d 961 (2d Cir. 2015)..................................................................... 9

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010)............................................................. 12, 15

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)........................................................ 6, 9, 10, 11

*Nolfi v. Ohio Kentucky Oil Corp.*,
    675 F.3d 538 (6th Cir. 2012) ................................................................ 16

*P. Stolz Family P'ship L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004)..................................................................... 18

*Pinter v. Dahl*,
    486 U.S. 622 (1988)...................................................................... 12, 13, 14

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003)............................................................. 26, 27

*In re Poseidon Concepts Sec. Litig.*,
    2016 WL 3017395 (S.D.N.Y. May 24, 2016) ...................................... 10

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998)........................................................ 26, 27, 28

*Rayner v. E*TRADE Fin. Corp.*,
    248 F. Supp. 3d 497 (S.D.N.Y. 2017)................................................... 9

*Red Rock Holdings, Ltd. v. Union Bank Trust Co., Ltd.*,
    1998 WL 474094 (S.D.N.Y. Aug. 11, 1998) ................................... 26, 28

*Rensel v. Centra Tech, Inc.*,
    2018 WL 4410126 (S.D. Fla. June 25, 2018) ...................................... 8

*Rensel v. Centra Tech, Inc.*,
    2019 WL 2085839 (S.D. Fla. May 13, 2019) ...................................... 13

*Richards v. Direct Energy Servs., LLC*,
    915 F.3d 88 (2d Cir. 2019)............................................................. 19, 20

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
  915 F. Supp. 2d 450 (S.D.N.Y. 2013)................................................................. 10

*In re Smart Techs., Inc. S'holder Litig.*,
  295 F.R.D. 50 (S.D.N.Y. 2013) ........................................................................... 9

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
  2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001)................................................... 12

*Strubel v. Comenity Bank*,
  842 F.3d 181 (2d Cir. 2016)................................................................................. 6

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004)................................................................................. 26

*Sussman v. Bank of Israel*,
  801 F. Supp. 1068 (S.D.N.Y. 1992)................................................................... 28

*Tagger v. Strauss Grp. Ltd.*,
  2018 WL 4356725 (E.D.N.Y. Sept. 12, 2018) ........................................... 26, 28

*In re Terrorist Attacks on Sept. 11*,
  714 F.3d 659 (2d Cir. 2013)....................................................................20, 21, 22

*In re Terrorist Attacks on Sept. 11*,
  718 F. Supp. 2d 456 (S.D.N.Y. 2010)............................................................... 22

*Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*,
  2010 WL 6864006 (S.D.N.Y. Dec. 14, 2010) ................................................... 16

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011)............................................................... 11

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)............................................................................... 11

*Wilson v. Eckhaus*,
  349 F. App'x 649 (2d Cir. 2009) ........................................................... 27, 28, 29

*Zakinov v. Ripple Labs, Inc.*,
  2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ............................................... 13, 14

**Rules / Statues**

15 U.S.C. § 77l................................................................................................... 10

15 U.S.C. § 77l(a)............................................................................................... 14

15 U.S.C. § 77l(a)(1)........................................................................................... 18

15 U.S.C. § 77m........................................................................................... 15, 18

15 U.S.C. § 77o................................................................................................... 15

A.R.S. § 44-2004A............................................................................................. 17

Ala. Code § 8-6-12(a) ........................................................................................ 19

Alaska Stat. § 45.56.660(b)..................................................................................... 19

Ar. Stat. § 23-42-103(a)(1) .................................................................................... 19

Cal. Corp. Code § 25008 ......................................................................................... 19

Cal. Corp. Code § 25110 ......................................................................................... 19

Cal. Corp. Code § 25507(a) .................................................................................... 17

Colo. Rev. Stat. § 11-51-102(1) .............................................................................. 19

Conn. Gen. Stat. § 36b-33(a) ................................................................................. 19

D.C. Code Ann. § 31-5606.05(f)(1) ........................................................................ 17

D.C. Code Ann. § 31-5606.05(f)(2)(A) ................................................................... 17

D.C. Code Ann. § 31-5608.01(a) ............................................................................ 19

Fed. R. Civ. P. 12(b)(1)............................................................................................. 1

Fed. R. Civ. P. 12(b)(2)............................................................................................. 1

Fed. R. Civ. P. 12(b)(6).......................................................................................... 1, 9

Ga. Code Ann. § 10-5-79(a) ................................................................................... 19

HRS § 485A-509(j)(1) ............................................................................................. 17

I.C. § 30-14-509(j)(1) .............................................................................................. 17

I.C. § 30-14-610(a) .................................................................................................. 19

I.C.A. § 502.509(10) ................................................................................................ 17

I.C.A. § 502.610(a) .................................................................................................. 19

Ind. Code Ann. § 23-19-6-10(a) .............................................................................. 19

Kan. Stat. Ann. § 17-12a509(j)(1) ........................................................................... 17

Kan. Stat. Ann. § 17-12a610(a) ............................................................................... 19

Ky. Rev. Stat. Ann. § 292.313(1) ............................................................................. 19

Mass. Gen. Laws Ann. ch. 110A, § 414(a) ............................................................. 20

Md. Code Ann., Corps. & Ass'ns § 11-703(f)(1) .................................................... 17

Md. Code Ann., Corps. & Ass'ns § 11-703(f)(2)(i) ................................................ 17

Md. Code Ann., Corps. & Ass'ns § 11-801(a) ........................................................ 20

Me. Rev. Stat. tit. 32, § 16610(1) ............................................................................ 19

Mich. Comp. Laws Ann. § 451.2509(10)(a) ............................................................ 18

Mich. Comp. Laws Ann. § 451.2610(1) ................................................................... 20

Minn. Stat. § 80A.76(j)(2) ....................................................................................... 18

Minn. Stat. § 80A.87(a) ........................................................................................... 20

Miss. Code Ann. § 75-71-509(j)(1) ......................................................................... 18

Miss. Code Ann. § 75-71-610 ................................................................................................ 20

Mo. Rev. Stat. § 409.5-509(j)(1) ........................................................................................... 18

Mo. Rev. Stat. § 409.6-610(a) ............................................................................................... 20

Wis. Stat. Ann. § 551.509 ..................................................................................................... 14

Wis. Stat. Ann. § 551.509(10)(a) .......................................................................................... 17

Wis. Stat. Ann. § 551.509(10)(b) .......................................................................................... 17

## Other Authorities

*https://nomics.com/assets/bnt-bancor#history* ....................................................................... 5

*https://nomics.com/assets/eth-ethereum#history* .................................................................... 7

Defendants BProtocol Foundation ("Bancor"), Eyal Hertzog, Yehuda Levi, Guy Benartzi, and Galia Benartzi (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), or in the alternative, pursuant to the doctrine of *forum non conveniens*.

## PRELIMINARY STATEMENT

Plaintiff's lawsuit is based on a demonstrable falsehood, and the truth behind that falsehood leaves Plaintiff without standing to sue. This falsehood is so flagrant that judicial notice of publicly available market data and simple calculator arithmetic lay it bare. Plaintiff purports to represent a class of individuals that lost money by purchasing Bancor Network Tokens ("BNT")—the token issued by defendant Bancor—but Plaintiff has in fact enjoyed stupendous gains far exceeding 100% returns. At all times relevant to deciding this motion, the BNT Plaintiff bought has been much more valuable than when he bought it. If instead of mucking up the courts with unfounded lawsuits, Plaintiff were to sit down at his computer and sell his BNT through the same Singapore exchange on which he purchased it, he would walk away with a tidy profit. Plaintiff's inability to show any injury at all dooms the Complaint for lack of standing.

Even if Plaintiff had standing to sue, however, it would not save the Complaint from dismissal. First, since Plaintiff purchased his BNT on an exchange based in Singapore, his transaction was wholly foreign to the United States and Section 12(a)(1) of the Securities Act does not apply.[1] Second, Plaintiff concedes he did not purchase his BNT from Defendants and therefore lacks the privity typically used to allege "statutory seller" liability under Section 12(a)(1) and its state law analogs. While Plaintiff makes sparse allegations of purported "solicitations," these do not

---

[1]   Indeed, no part of the Securities Act applies because BNT are not securities. But the Court need not reach that question to dismiss the Complaint.

save his Complaint.  Even if the allegations were sufficient to show solicitation, which they are not, Plaintiff does not plead that he was **aware** of, let alone was solicited by, any of these alleged statements when he purchased BNT.  Third, even if Plaintiff had standing and had stated a viable claim, the Complaint is too late.  The applicable statute of limitations and statute of repose bar both Plaintiff's federal claims and the Wisconsin Blue Sky law claims.  Without any claims of his own, Plaintiff cannot prosecute claims on behalf of any hypothetical class.

Turning to the other side of the "v," the Complaint should independently be dismissed because it was brought in an inconvenient forum against Defendants not subject to personal jurisdiction.  Plaintiff pleads **no contacts whatsoever** with the United States for two of the individual defendants, who are both citizens of Israel who reside in that country.  As to the entity and other two individuals, Defendant Bancor is a Swiss nonprofit foundation that has, at all times (including during the June 2017 token generating event) operated from Israel and Switzerland, and the other two individual defendants are likewise Israeli citizens who reside in Israel.  The flimsy contacts pleaded with respect to these defendants are grossly insufficient to exercise general jurisdiction, and there is no nexus between any of the alleged contacts and marketing of BNT to support specific jurisdiction. Finally, the Complaint is based on a man in Wisconsin using an exchange in Singapore to purchase tokens issued by a Swiss entity.  The Southern District of New York is convenient only for Plaintiff's counsel—not for any of the parties or any of the would-be witnesses.  Because Israel has a robust legal system of which Plaintiff could avail himself (if he had any harm to vindicate), this matter should be dismissed on grounds of *forum non conveniens*.

Grounded on a misrepresentation and brought too late by a Plaintiff with no standing in an inconvenient forum against Defendants not subject to personal jurisdiction, all of the Complaint's substantively flawed claims should be dismissed with prejudice.

## FACTUAL BACKGROUND

Bancor is a blockchain-focused Swiss foundation with offices in Switzerland and Israel.  Dkt. 50 ("2d Am. Compl.," "Second Amended Complaint," or "Complaint") ¶ 17.  The Complaint does not allege that Bancor has any physical presence within the United States, and the four individual defendants, Eyal Hertzog, Yehuda Levi, Guy Benartzi, and Galia Benartzi, each reside in Israel.  *Id.* at ¶¶ 17-21.

On June 12, 2017, Bancor initially offered a cryptocurrency token called BNT for sale.  *Id.* at ¶¶ 51, 61.  Through this sale of BNT tokens, identified by Plaintiff as  an "initial coin offering" or "ICO," but more accurately referred to as a "token generation event" in these circumstances, Bancor received approximately $153 million.[2]  *Id* at ¶ 51.

The sole lead plaintiff, Timothy Holsworth, did not purchase BNT in this 2017 token generation event.  In fact, the Complaint does not allege that even $1 of the $153 million came from United States buyers or that Bancor has ever sold a single token to a buyer in the United States.  Rather, the Complaint alleges that Defendants took steps to "solicit" individuals worldwide to purchase BNT on secondary market exchanges.  *Id. at* ¶¶ 59-71.  It alleges that, in May 2017, Bancor published the first version of a whitepaper describing BNT online, i*d.* at ¶ 59, that certain Bancor-affiliated individuals discussed BNT-related technology at conferences, *id.* at ¶ 71, that Bancor had a website, *id.* at ¶ 70, and that it posted information on Twitter, *id.* at ¶ 71.  But the Complaint contains no suggestion that Plaintiff Holsworth knew any of Bancor's alleged solicitations existed before filing his lawsuit, let alone that Holsworth read the whitepaper, attended a conference, perused Bancor's website, or followed its Twitter feed.  In other words, the Complaint

---

[2]  Though Defendants are constrained to accept the facts in the Second Amended Complaint as true for the purposes of this motion to dismiss, it bears noting that the token generating event did not result in Bancor receiving United States Dollars, but instead the value was generated from Ethereum tokens to seed Bancor's network with liquidity.

contains no allegation connecting Holsworth in any way, shape, or form to Defendants' alleged solicitations.

The Complaint alleges that April 3, 2019 is a critical date on which various things became known to Plaintiff.  In particular, Plaintiff alleges that, although BNT have been securities since the day they were issued on June 12, 2017, *id.* at ¶ 85, until "the SEC issued its Framework on April 3, 2019, a reasonable investor would not have concluded that ERC-20 tokens like the BNT token were generally securities subject to the securities laws," *id.* at ¶ 84.  Plaintiff separately alleges that Defendants "deliberately created the impression that BNT tokens were not securities," *id.* at ¶ 124, by describing Bancor as "a Swiss non-profit foundation whose core objective is the establishment of the Bancor protocol as a global standard for intrinsically tradeable currencies," *id.*, and allegedly concealing the purportedly centralized nature of BNT, *id.* at ¶ 126.  Plaintiff does not clarify how this alleged concealment has anything to do with the SEC staff's Framework or with Plaintiff's benchmark April 3, 2019 date.  And, once more, Plaintiff fails to allege that he or anyone read or heard, much less relied, on any such statements made by Bancor.

Plaintiff does concede that, soon after the SEC staff's Framework, in July 2019, Bancor undertook further steps to prevent users in the United States from purchasing BNT.  *Id.* at ¶ 27. Nonetheless, the Complaint alleges that Plaintiff Holsworth, who lives in Wisconsin, allegedly purchased BNT a few months later in violation of Bancor's efforts to exclude U.S. purchasers from the market.  *Id.* at ¶ 16, Dkt. 50-1.  While in Wisconsin, Holsworth allegedly went online and accessed the COSS exchange, which is based in Singapore.  On the COSS exchange, Holsworth used Ether, another cryptocurrency, to purchase 587 BNT tokens for the equivalent of $212.05 on September 4, 2019.  Dkts. 23-4, 50-1.  The implied price of BNT in USD at the time Holsworth

purchased was $0.36 per BNT token.   As of June 8, Holsworth continued to hold the tokens he purchased.  Dkt. 23-4.

Holsworth has offered no allegations regarding whether he still holds the tokens, however, as of the date of Holsworth's First Amended Complaint, August 20, 2020, the price of BNT was $2.31.[3]  If Holsworth had decided to sell his BNT the day he filed his First Amended Complaint, he would have made a 539% return on his purchase.   This belies the First Amended Complaint's allegation that "BNT today are worth far less than the price Plaintiff . . . paid for them."  Dkt. 48 ¶ 100.  The Second Amended Complaint was filed on September 11, 2020.  Dkt. 50.  On that date, the price of BNT was $1.17.   As of the date of the Second Amended Complaint, Plaintiff had an unrealized gain of 223%, again, in sharp contrast to the Second Amended Complaint's false allegation that "BNT today are worth far less than the price Plaintiff . . . paid for them."  2d Am. Compl. ¶ 121.

## PROCEDURAL HISTORY

William Zhang filed the case on April 3, 2020.  Dkt. 1.  Holsworth moved to be appointed lead Plaintiff on June 8, 2020 (Zhang did not so move).  Dkt. 21.  On August 20, 2020, the Court appointed Holsworth as sole lead plaintiff.  Dkt. 46.  Holsworth filed the First Amended Complaint on August 20, 2020.  Dkt. 48.  On September 11, 2020, Holsworth filed the Second Amended Complaint.  Dkt. 50.

---

[3]   All BNT prices cited herein are daily closing prices from Nomics.com, specifically the page *https://nomics.com/assets/bnt-bancor#history,* which provides professional-grade market data, including as to BNT prices, to institutional cryptoasset purchasers and exchanges.  The prices are visible on the website and freely available for download in CSV format.  The Court can take judicial notice of publicly available market prices of items traded on such exchanges. *See In re AOL Time Warner, Inc. Secs. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 245 n.61 (S.D.N.Y. 2004) (taking judicial notice of the price of publicly traded bonds to dismiss plaintiff's claim for lack of Article III injury in fact).

## ARGUMENT

The Court can and should dismiss the Complaint for several independent reasons.  As an initial matter, Plaintiff cannot establish that he has standing to bring a claim as he has not suffered a cognizable injury-in-fact, caused by Defendants, and redressable by this Court.  But even were the Court to look past the false statements regarding the Plaintiff's losses in the Complaint, the Complaint fails to state a claim for three reasons requiring dismissal with prejudice.  *First*, the Complaint asserts claims under Section 12(a)(1) of the Securities Act which are based on extraterritorial activities, in violation of the principles underpinning the Supreme Court's decision in *Morrison v. National Australia Bank*.[4]  *Second*, it fails to allege sufficient solicitation by Defendants to establish that Defendants are "statutory sellers" under the statute.  *Third*, the Complaint is untimely under the statutes of limitation and repose.  Further underscoring the infirmity of the Complaint, Plaintiff has failed to allege facts sufficient to make a prima facie showing that this Court has personal jurisdiction over the Defendants.  *Finally*, should the Court decline to reach any of the above questions, it can dismiss the suit pursuant to the doctrine of *forum non conveniens*.

## I.  PLAINTIFF LACKS STANDING TO BRING THIS SUIT BECAUSE HE HAS SUFFERED NO INJURY FROM PURCHASING BNT

Plaintiff's claim fails at the threshold because his allegation that "BNT today are worth far less than the price Plaintiff . . . paid for them," 2d Am. Compl. ¶ 121, is patently and demonstrably false.  To establish standing under Article III of the United States Constitution, "a plaintiff must demonstrate (1) 'injury in fact,' (2) a 'causal connection' between that injury and the complained-of conduct, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'"  *Strubel v. Comenity Bank*, 842 F.3d 181, 187-88 (2d Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504

---

[4]   Though the Complaint also asserts a claim under Section 15 of the Securities Act, this claim is derivative of the Section 12(a)(1) claim.

U.S. 555, 560-61 (1992)).  "[E]ven where . . . Congress has statutorily conferred legal interests on consumers, a plaintiff only has standing to sue if [he] can allege concrete and particularized injury to that interest."  *Id.* at 188.  Holsworth cannot show that he was injured by his purchase of $212.05 worth of BNT, and is thus without standing to bring this action.

As of June 8, 2020 (when Holsworth was appointed lead plaintiff in this action), Holsworth continued to hold the BNT he purchased.  *See* Dkt. 23-4.  On that date and on all dates since, the market price of BNT has been at least twice what Holsworth paid.  On the day the First Amended Complaint was filed, August 20, 2020, BNT was worth 6.4 times the price at which Holsworth purchased it.[5]  Plaintiff has experienced an extraordinary gain from purchasing and holding his BNT, amounting to a return of 539%—quite the opposite of the type of injury required to confer constitutional standing.

In his Complaint, Holsworth purports to represent a class of "[a]ll persons who purchased BNT tokens, which were first sold on or about June 12, 2017, in a domestic U.S. transaction and were injured thereby."  2d Am. Compl. ¶ 131.  But because BNT has risen dramatically in value since Holsworth's purchase, he personally has not been injured and cannot possibly represent this class, even if it has any members.  Holsworth's claims must be dismissed.  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (quoting *Lewis v.*

---

[5]   Holsworth would have also had a large gain had he sold on the date he filed his Second Amended Complaint, when his gain would have been a 223% return.  Nor can Holsworth argue that if only he had held his Ether tokens instead of exchanging them for BNT on September 4, 2019, he would have made ***more*** of a profit than he has made holding BNT—the return from holding Ether between September 4, 2019 and August 20, 2020 or September 11, 2020 would have been 137% or 113%, respectively, far less than Holsworth's return from holding BNT.  *See* note 3, *supra*, and Nomics page *https://nomics.com/assets/eth-ethereum#history*.

*Casey*, 518 U.S. 343, 357 (1996)); *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 94

(2d Cir. 2018) (recognizing that class action claims fail to "support standing against a particular

defendant when that defendant did not actually injure a named plaintiff").

Were Plaintiff to argue that his injury is the more abstract one that he was forced to purchase

an unregistered security—regardless of the fact that the purchase has been a financial boon to him—

Plaintiff is unable to show that such injury would be redressable in this case.  As an initial matter,

Plaintiff does not allege that he still holds BNT that he could return to Bancor.  2d Am. Compl. ¶

122 ("To the extent Plaintiff and the Class still hold BNT tokens . . . .").  As noted above, if

Holsworth no longer holds BNT, he has no standing at all.  *Rensel v. Centra Tech, Inc.*, 2018 WL

4410126, at *6 (S.D. Fla. June 25, 2018) (dismissing a plaintiff for lack of standing where plaintiff

profited from the sale of the tokens and holding that because he "ha[d] sold and no longer h[eld] the

Centra Tokens . . . he [was] entitled only to monetary damages, not to rescission").  But even

assuming Holsworth still possesses BNT, he must demonstrate the three elements of standing with

respect to each type of relief he seeks, including the remedy of rescission.  *See Davis v. Fed.

Election Comm'n*, 554 U.S. 724, 734 (2008) ("Standing is not dispensed in gross. . . .  Rather, a

plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that

is sought." (internal alterations and quotation marks omitted)).  However, "rescission," here, would

not provide **Plaintiff**—who purchased his BNT from a party not before the Court—with any remedy

to his alleged harm.  Thus, Plaintiff lacks standing and his claims must be dismissed.

## II.     THIS COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Even if Plaintiff had standing, his claims fail on the merits for three independent reasons.

*First*, Plaintiff's claims fail because the securities laws of the United States do not apply to the

extraterritorial transaction that he purports to have executed.  *Second*, Plaintiff has failed to allege

sufficient facts to establish that Defendants were a "statutory seller" as required under Section 12(a)(1) of the Securities Act and the analogous Wisconsin Blue Sky law.  *Third*, any purported claims that Plaintiff has are untimely under both the applicable federal and state law statutes of limitation and repose.

A complaint fails under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  On a motion to dismiss, a court "need not accept conclusory allegations or legal conclusions couched as factual [] allegations."  *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (quotation marks omitted).  Accordingly, "bald assertions and conclusions of law will not suffice to avoid dismissal, nor will factual allegations that are wholly conclusory."  *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018) (internal citation and quotation marks omitted).  A court "may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken" in deciding a motion to dismiss.  *Rayner v. E*TRADE Fin. Corp.*, 248 F. Supp. 3d 497, 500 (S.D.N.Y. 2017) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)), *aff'd*, 899 F.3d 117 (2d Cir. 2018).

**A.      The United States' Securities Laws Do Not Apply To Plaintiff's Transactions.**

The federal securities laws do not apply extraterritorially.  *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010).[6]  Instead, the federal securities laws are limited to "transactions in

---

[6]  Although *Morrison* dealt with claims under Section 10(b) of the Securities Exchange Act of 1934, the Court's logic—that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none"—applies equally with respect to Section 12(a)(1) of the Securities Act. *Morrison*, 561 U.S. at 255.  In fact, courts have extended *Morrison* to other provisions of the Securities Act, and the logic of those decisions is equally applicable to Section 12(a)(1).  *Compare In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 56 (S.D.N.Y. 2013) (extending *Morrison* to

securities listed on domestic exchanges, and domestic transactions in other securities." *Id.*; *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 66 (2d Cir. 2012) ("§ 10(b) and Rule 10b–5 do not apply extraterritorially, but only apply to 'transactions in securities listed on domestic exchanges[ ] and domestic transactions in other securities.'").

Plaintiff himself appears to recognize *Morrison*'s domestic transaction requirement when he writes in the Complaint that the class he purports to represent will include only those individuals who purchased BNT "in a domestic U.S. transaction." 2d Am. Compl. ¶ 131. Plaintiff errs, however, in assuming that every transaction involving a U.S. resident is a domestic U.S. transaction. To the contrary, transactions that meet the *Morrison* test are carefully limited and exclude many transactions made by U.S. residents, including the transaction at issue here.

The first prong of *Morrison* for domestic exchanges covers only national exchanges registered with the SEC, not "over-the-counter" exchanges that are not so registered, even if they are located in the United States. *In re Poseidon Concepts Sec. Litig.*, 2016 WL 3017395, at *12 (S.D.N.Y. May 24, 2016); *see also United States v. Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015). And the second prong of *Morrison* for "domestic transactions in other securities" is limited to transactions where "irrevocable liability is incurred or title passes within the United States." *Absolute Activist*, 677 F.3d at 67.

Courts have consistently held that the category "domestic transactions in other securities" ***does not*** include purchases made on foreign exchanges even when an order to purchase is placed from the United States. *See, e.g.*, *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 473 (S.D.N.Y. 2013) (rejecting argument that "purchases of foreign shares on foreign

---

section 11 and 12(a)(2) claims because, like 10(b), Sections 11 and 12(a)(2) create liability "only where the plaintiff has 'acqui[red]' or 'purchased' a security"); *with* 15 U.S.C. § 77l ("Any person

exchanges constitute domestic transactions within section 10(b)'s reach because the buy orders were placed from the United States"); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 532 (S.D.N.Y. 2011) ("[T]he Court joins other lower courts that have rejected the argument that a transaction qualifies as a 'domestic transaction' under *Morrison* whenever the purchaser or seller resides in the United States, even if the transaction itself takes place entirely over a foreign exchange"), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016); *Cornwell v. Credit Suisse Grp.*, 729 F. Supp. 2d 620, 624 (S.D.N.Y. 2010) ("[T]o carve out of the new rule a purchase or sale of securities on a foreign exchange because some acts that ultimately result in the execution of the transaction abroad take place in the United States amounts to nothing more than the reinstatement of the conduct test.").  Here, Plaintiff's federal securities claims are not based on transactions in securities listed on domestic exchanges or domestic transactions in other securities and are therefore outside of the reach of the United States' securities law, including section 12(a)(1).  Moreover, Plaintiff is not within the very class he seeks to represent.

*First*, Plaintiff alleges that his sole transaction occurred on the COSS Exchange. Dkt. 50-1 ¶ 5.  Plaintiff never alleges that the COSS exchange is a national or domestic exchange, and there can be no dispute that it is not.  *Second*, Plaintiff fails to allege that, while transacting on the COSS exchange, title for the cryptocurrencies at issue in Plaintiff's transaction passed within the United States.  Nor is this a defect Plaintiff could possibly cure, because COSS is based in Singapore.  And it makes sense that Plaintiff transacted abroad, given that Plaintiff concedes that Defendants went to some effort months before his purchase to prevent U.S. residents like Plaintiff from purchasing BNT.  *See* 2d Am. Compl. ¶ 27.  Consequently, Plaintiff's transaction does not qualify as "domestic

---

who [violated Section 12(a)(1)] . . . shall be liable . . . to the person purchasing such security from him.").

transactions in other securities," but rather was extraterritorial, and his federal securities claims must be dismissed.

### B.  Defendants Were Not A "Statutory Seller" Under Section 12(a)(1).

Liability under Section 12(a)(1) of the Securities Act is limited to a specific and narrow set of participants in securities transactions.  Specifically, Section 12(a)(1) is limited to "statutory sellers." *Pinter v. Dahl*, 486 U.S. 622, 643–47 & n. 21 (1988).  A defendant qualifies as a "statutory seller" "if he: (1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'"  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (quoting *Pinter*, 486 U.S. at 642, 647).

To plead that a defendant "passed title" sufficiently to satisfy the first prong of the *Pinter* test, a plaintiff must allege that he was in privity with the defendant and actually purchased his shares directly from the defendant.  *Pinter*, 486 U.S. at 644 n.21; *see also Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.*, 2001 WL 300733, at *10 (S.D.N.Y. Mar. 28, 2001) ("[P]laintiffs here did not purchase directly from [defendant] and thus lack standing under the first prong of *Pinter*."); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) ("As plaintiff has alleged only that NACC was 'part of the chain of title' and not that NACC directly sold the Certificates to it, plaintiff cannot satisfy the first prong of *Pinter*.").  To adequately plead the second, "successfully solicited," prong of the *Pinter* test, a plaintiff must adequately allege some "direct contact" with the defendant.  *In re Deutsche Telekom AG Secs. Litig.*, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002).  Further, a plaintiff "must allege not only that [Defendants] actively solicited investors, but that [he] purchased the securities as a result of [Defendants'] solicitation."  *Steed Fin. LDC*, 2001 WL 1111508, at *7.

Here, Plaintiff fails to adequately plead either prong of *Pinter*.  *First*, Plaintiff does not allege, even in conclusory fashion, that any Defendant passed title to him.  Nor could he make such an allegation.  Plaintiff alleges that Bancor sold $153 million worth of BNT on June 12, 2017, 2d Am. Compl. ¶ 63, and that he purchased $212 worth of BNT more than two years later, on September 4, 2019, through a secondary market exchange based in Singapore.  Because Plaintiff's transaction was not made directly with Defendants, and in fact occurred years after Defendants allegedly sold BNT, Plaintiff does not satisfy the first prong of *Pinter*.[7]

Second, Plaintiff does not adequately allege that any Defendant solicited his purchase.  In fact, the 190-page complaint contains only sparse and conclusory allegations regarding any purported "solicitation" to investors.  Importantly, even assuming these sparse allegations, which largely consist of a "whitepaper" and certain posts on Twitter, 2d Am. Compl. ¶¶ 54-55, 71, qualify as "solicitations" rather than the explanatory materials describing Bancor's methodology and goal that they facially appear to be, Plaintiff must allege that he was directly solicited by Defendants and that these solicitations resulted in his purchase.  *In re Deutsche Telekom*, 2002 WL 244597, at *5.  Plaintiff does not make any such allegation, even in conclusory fashion.[8]  In fact, Plaintiff does not even allege that he read, heard, or even was aware of any of the alleged solicitations at the time he purchased BNT, let alone that those solicitations were the reason for his purchase.  *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *4 (S.D. Fla. May 13, 2019) (dismissing the Section 12(a)(1) claim for alleged unlawful sale of CRT Tokens where no allegations that purported solicitation of

---

[7]  The facts alleged in this case differ notably from the facts alleged in *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020), where the plaintiff alleged that it was possible, even if unlikely, that he had purchased a token directly from a defendant.  2020 WL 922815, at *3, *16.  Here, Plaintiff has not even alleged that he *might* have purchased directly from a defendant.

[8]  Nor would such an allegation be coherent given the last alleged "solicitation" occurred in March 2019, while Plaintiff did not purchase BNT until 6 months later in September 2019.

unregistered cryptocurrency on Twitter "was a *successful* solicitation . . . or that Plaintiffs even saw the posts").[9]  Accordingly, Plaintiff also fails to satisfy the second prong of *Pinter*.[10]

### C.    Defendants Are Not Liable Under Wisconsin's Blue Sky Law.

Like Plaintiff's Section 12(a)(1) claim, Plaintiff's Wisconsin Blue Sky claim—the sole Blue Sky statute that Plaintiff can personally invoke, given his residence in Wisconsin—fails because Plaintiff fails to allege that Defendants qualify as statutory sellers.  Wis. Stat. § 551.509 is the Wisconsin state-law equivalent to Section 12(a)(1) and provides a cause of action for plaintiffs who purchase securities that are not registered in accordance with the relevant registration requirements. Wis. Stat. Ann. § 551.509 ("A person is liable to the purchaser if the person sells a security in violation of [Wisconsin's securities registration requirements] . . . ."); *with* 15 U.S.C. § 77l(a) ("Any person who (1) offers or sells a security in violation of [the federal securities registration requirements] shall be liable . . . to the person purchasing such security from him . . . .").  Where, as here, Wisconsin's Blue Sky laws have a parallel in federal securities laws, courts look to federal law as persuasive authority.  *Carney v. Mantuano*, 554 N.W.2d 854, 857 n.3 (Wis. Ct. App. 1996) ("Federal securities-related case law is persuasive authority when interpreting comparable Wisconsin provisions.").  Therefore, as under Section 12(a)(1), Plaintiff must adequately allege that Defendants qualify as "statutory sellers" to maintain his Wisconsin Blue sky claim.  For the reasons explained

---

[9]    This fact further distinguishes this case from *Zakinov*, where the plaintiff alleged that "Lead Plaintiff was motivated to purchase XRP by the promotional activities of Defendants described [within the complaint].   Lead Plaintiff saw and relied on Defendants' repeated representations that adoption of XRP by financial institutions and banks would drive demand for XRP."  *In re Ripple Labs Inc. Litig*, Case No. 18-cv-06753-PJH (N.D. Cal.), Dkt. No. 63 at ¶ 13.

[10]    Even if Plaintiff had adequately alleged that Defendants qualified as statutory sellers— which he has not—Plaintiff's claim would still fail because he solely alleges purchases in the secondary markets, which are not covered by Section 12 of the Securities Act. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 572 (1995) (holding claims under Section 12(a)(2) should be restricted to public offerings, as opposed to secondary market transactions, to bring Section 12(a)(2) in line with Section

above, Section II.B, he has failed to do so.  Accordingly, his Wisconsin Blue Sky claim must also be dismissed.

**D.  Because Plaintiff's Section 15 Claim Is Derivative Of The Section 12(a)(1) Claim, It Fails As Well.**

Plaintiff's second cause of action, which asserts "Control Person Liability," is plainly derivative of Plaintiff's first cause of action.  *See* 2d Am. Compl. ¶¶ 152-157.  For the reasons above, the Complaint fails to state a claim for liability under Section 12(a)(1) of the Securities Act. Thus the Court should dismiss the derivative Section 15 claims as well.  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010) ("Section 15, in turn, creates liability for individuals or entities that 'control[] any person liable' under section 11 or 12.  [15 U.S.C.] § 77o. Thus, the success of a claim under section 15 relies, in part, on a plaintiff's ability to demonstrate primary liability under sections 11 and 12.").

**E.  Holsworth's Claims Are Barred By The Statute Of Limitations.**

1.  <u>Plaintiff's Federal Claims Are Untimely Under The Statute Of Limitations.</u>

Actions brought under Section 12(a)(1) of the Securities Act are untimely "unless brought within one year after the violation upon which it is based."  15 U.S.C. § 77m.  Unlike Section 12(a)(2) of the Securities Act, which governs misstatements in connection with prospectuses, Section 12(a)(1)'s statute of limitation is not subject to a "discovery rule."  *Compare* 15 U.S.C. § 77m. (action brought under 12(a)(1) is untimely "unless brought within one year ***after the violation*** upon which it is based") *with id.* (action brought under 12(a)(2) is untimely unless "brought within one year ***after the discovery*** of the untrue statement or the omission") (emphasis added).  Thus, actions brought under Section 12(a)(1) are untimely unless brought within one year of the "violation

12(a)(1) and Section 11 claims that are so limited); *id.* at 600 n.4 (Ginsburg, J., dissenting) ("There is no dispute that [Section 12(a)(1)] appl[ies] only to public offerings.").

upon which it is based" regardless of when the alleged violation was discovered. *See, e.g.*, *Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*, 2010 WL 6864006, at *2 (S.D.N.Y. Dec. 14, 2010) (Hellerstein, J.) ("As the text demonstrates, § 12(a)(1) is not subject to a discovery rule."); *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 553 (6th Cir. 2012) ("[T]he fact that the statute plainly fails to include a discovery rule for § 12(a)(1)—when juxtaposed with a provision within the same sentence specifically allowing it for § 12(a)(2)—shows that Congress intended to negate equitable tolling in this context.").

As explained above, Section II.B, Defendants did not sell any securities directly to Plaintiff, and therefore the sole potential basis for liability is premised on the alleged "solicitations" by Defendants. Thus, those solicitations ***are themselves*** the purported violation upon which this action is based. Accordingly, this action is untimely unless brought within one year of the alleged solicitations. *See generally In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at *4 (S.D.N.Y. June 4, 2012) (statute of limitation runs from transaction that triggered liability, which may not necessarily be the last purchase).

Here, the last "solicitation" alleged by Plaintiff occurred on March 11, 2019. Therefore, this action needed to be filed by March 10, 2020, in order to be timely under the statute of limitation. Because this action was not filed until April 3, 2020, this action is untimely and must be dismissed.[11]

---

[11]   Notably, even if a discovery rule somehow applied, Plaintiff's claims would still be untimely. Plaintiff misleadingly argues that he could not have "discovered" his claims until 2019 because he purportedly was unaware of the relevant law until the SEC offered guidance in 2019 and he purportedly did not understand how certain aspects of BNT functioned until the BNT platform "had been given" some unspecified amount of "time to develop." 2d Am. Compl. ¶¶ 18, 105. These arguments are meritless. Although Plaintiff claims that prior to a "Framework" from the SEC in 2019, "[i]t was . . . unclear to a reasonable investor that BNT was a security," *id.* at ¶ 81, Plaintiff misleadingly omits the fact that the *Howey* test was considered the relevant test for whether a token constituted a security well before the SEC staff's interpretive "Framework." *See, e.g.*, SEC, Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO, Exchange Act Release No. 81207 (July 25, 2017) (applying *Howey* test to DAO Tokens and stating

2.    <u>Plaintiff's Blue Sky Claims Are Untimely Under The Statute Of Limitations.</u>

Like Section 12(a)(1), Wisconsin's Blue Sky law—which is the sole Blue Sky law Plaintiff can personally assert—has a one year statute of limitation that is triggered from when "the violation occurred." Wis. Stat. Ann. § 551.509(10)(a).  Further, like Section 12(a)(1), the relevant Wisconsin Blue Sky law's statute of limitation does not provide for a discovery rule.  *Compare* Wis. Stat. Ann. § 551.509(10)(a) (claims for sale of unregistered securities untimely *"unless the action is instituted within one year **after the violation occurred**"); *with* Wis. Stat. Ann. § 551.509(10)(b) (claims for sale misrepresentations made in connection with sale of securities untimely *"unless the action is instituted within the earlier of 2 years **after discovery** of the facts constituting the violation or 5 years after the violation").[12]  Thus, for the same reasons as Plaintiff's Section 12(a)(1) claim, Plaintiff's Wisconsin Blue Sky claim is untimely under the statute of limitation.

---

generally that cryptocurrencies may be securities).  Plaintiff's supposed explanation that Defendants purportedly made "misstatements" that "were material to the assessment of purchasers' legal rights and claims based on the Tokens' status as a securities [sic]," 2d Am. Compl. ¶125, also fails. Plaintiff does not explain how any of the purportedly "misleading" statements impacted Plaintiff's evaluation of whether BNT is a security.  Plaintiff does not even attempt to claim that the purported "misstatements" had any impact on three of the four *Howey* factors.  *Id.* at ¶¶ 88-99.  And for the fourth *Howey* factor—investors' expectations that profits would be derived from management's efforts—Plaintiff does not explain how the purported misrepresentations had any impact since he alleges that "[p]urchasers of pre-functional tokens, such as BNT, ***necessarily rely on managerial efforts of others to realize value from their investments***." *Id.* at ¶ 103 (emphasis added).  Plaintiff also does not explain when (or how) he came to the realization of the "true" facts regarding this factor.  *Id.* at ¶ 105.  Thus, even under discovery rule analysis, Plaintiff's claims are untimely.

[12]   Numerous other Blue Sky laws also have 1-year statute of limitations and therefore would be untimely even if Plaintiff could personally bring those claims.  *E.g.*, A.R.S. § 44-2004A (1 year after the violation occurred under Arizona Blue Sky laws); Cal. Corp. Code § 25507(a) (2 years after the violation or 1 year after the discovery of the facts constituting such violation, whichever shall first expire, under California Blue Sky laws); D.C. Code Ann. § 31-5606.05(f)(1), (2)(A) (3 years after the contract of sale or purchase or 1 year after the violation, whichever is earlier, under the District of Columbia Blue Sky laws); HRS § 485A-509(j)(1) (1 year after the violation occurred under Hawaii Blue Sky laws); I.C. § 30-14-509(j)(1) (same under Idaho Blue Sky laws); I.C.A. § 502.509(10) (same under Iowa Blue Sky laws); Kan. Stat. Ann. § 17-12a509(j)(1) (same under Kansas Blue Sky laws); Md. Code Ann., Corps. & Ass'ns § 11-703(f)(1), (2)(i) (1 year after the violation, or 3 years after the contract of sale or purchase, whichever is earlier, under Maryland Blue

3.   <u>Plaintiff's Federal Claims Are Untimely Under The Statute Of Repose.</u>

In addition to the one-year statute of limitation, the Securities Act contains a three-year statute of repose.  15 U.S.C. § 77m ("In no event shall any such action be brought to enforce a liability created under section . . . 77l(a)(1) of this title more than three years after the security was bona fide offered to the public.").  In the context of allegedly unregistered securities, the statute of repose runs from when the alleged security is "first-offered" to the public.  *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 106 (2d Cir. 2004).

A statute of repose is an absolute outer limit on liability.  *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014).  Therefore, the Supreme Court has "repeatedly [] stated in broad terms that statutes of repose are not subject to equitable tolling."  *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017) (citing cases).  Given the strict nature of statutes of repose, a class representative must file its action within the statute of repose period to be timely.  This is true even where a prior plaintiff filed an initial complaint within the class period.  *See, e.g.*, *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 153–54 (S.D.N.Y. 2017) ("Because Harris was time-barred from raising any individual claims at the time of her entry into this case . . . she should not have been permitted to serve as a lead plaintiff."); *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *22 (D.N.J. Dec. 31, 2018) (holding named plaintiff's claim untimely where "[i]t was only after the expiration of the statute of repose, . . . that the [] Plaintiff was added by amendment").

Here, although a different purported BNT purchaser—who did not move to be appointed lead plaintiff—arguably filed a complaint within the statute of repose period, Plaintiff did not file his first

---

Sky laws); Mich. Comp. Laws Ann. § 451.2509(10)(a) (1 year after the violation occurred under Michigan Blue Sky laws); Minn. Stat. § 80A.76(j)(2) (same under Minnesota Blue Sky laws); Miss. Code Ann. § 75-71-509(j)(1) (same under Mississippi Blue Sky laws); Mo. Rev. Stat. § 409.5-509(j)(1) (same under Missouri Blue Sky laws).  Defendants reserve the right to fully brief each and every state if the Court so desires.

complaint in this action until August 20, 2020.  Because that is more than three-years from when the token generating event occurred, *i.e.*, the date the purported securities were first offered to the public, Plaintiff's Securities Act claims are untimely under the statute of repose and must be dismissed.

**F.      The Court Should Dismiss The State Blue Sky Claims.**

As demonstrated above, Plaintiff has failed to state a claim under the Securities Act or the Wisconsin Blue Sky law.  Plaintiff also cannot state a claim for violation of the remaining Blue Sky claims because he does not—and cannot—allege that his purchase (or the corresponding sale) occurred in any state other than Wisconsin.  This dooms those claims because under both the Dormant Commerce Clause and relevant Blue Sky statutes, the Blue Sky laws apply solely to transactions that occur within the state whose laws are being invoked.  *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 156 (2d Cir. 2017) ("[B]lue-sky laws . . . only regulate[] transactions occurring within the regulating States.") (citations omitted); *see also Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 106 (2d Cir. 2019) ("[T]he United States Constitution would also bar Massachusetts from regulating, via consumer protection law, the rates that Direct Energy charged consumers in Connecticut.").[13]  Accordingly, Plaintiff cannot pursue any of the Blue Sky Claims.[14]

---

[13]     *See also* Ala. Code § 8-6-12(a) (the registration requirement under Alabama Blue Sky laws applies only to "persons who sell or offer to sell when (1) an offer to sell is made in this state, or (2) an offer to buy is made and accepted in this state"); Alaska Stat. § 45.56.660(b) (same under Alaska Blue Sky laws); Ark. Stat. § 23-42-103(a)(1) (same under Arkansas Blue Sky laws); Cal. Corp. Code §§ 25008, 25110 (same under California Blue Sky laws); Colo. Rev. Stat. § 11-51-102(1) (same under Colorado Blue Sky laws); Conn. Gen. Stat. § 36b-33(a) (same under Connecticut Blue Sky laws); D.C. Code Ann. § 31-5608.01(a) (same under the District of Columbia Blue Sky laws); Ga. Code Ann. § 10-5-79(a) (similar under Georgia Blue Sky laws); I.C. § 30-14-610(a) (similar under Idaho Blue Sky laws); Ind. Code Ann. § 23-19-6-10(a) (similar under Indiana Blue Sky laws); I.C.A. § 502.610(a) (similar under Iowa Blue Sky laws); Kan. Stat. Ann. § 17-12a610(a) (similar under Kansa Blue Sky laws); Ky. Rev. Stat. Ann. § 292.313(1) (same under Kentucky Blue Sky laws); Me. Rev. Stat. tit. 32, § 16610(1) (similar under Maine Blue Sky laws);

III.    **IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE COMPLAINT WITHOUT PREJUDICE BECAUSE IT LACKS JURISDICTION OVER DEFENDANTS AND IS AN INCONVENIENT FORUM FOR THE SUIT**

The Court may dismiss this action without even reaching the merits questions, as Plaintiff has failed to allege sufficient specific allegations to establish that any defendant is subject to the Court's personal jurisdiction.  Even assuming jurisdiction could be constitutionally exercised over Defendants, this Court should dismiss the action pursuant to the doctrine of *forum non conveniens*.

A.      **This Court Lacks Jurisdiction Over Defendants.**

To survive a motion to dismiss based on a lack of personal jurisdiction, "a plaintiff must make a prima facie showing that jurisdiction exists." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted).  In analyzing whether plaintiff has made such a showing, courts "will not draw argumentative inferences in the plaintiff's favor . . . nor must [they] accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted).  In other words, "allegations or evidence of activity constituting the basis of jurisdiction must be non-conclusory and fact-specific." *ICO Servs., Ltd. v. Coinme, Inc.*, 2018 WL

---

Md. Code Ann., Corps. & Ass'ns § 11-801(a) (same under Maryland Blue Sky laws); Mass. Gen. Laws Ann. ch. 110A, § 414(a) (same under Massachusetts Blue Sky laws); Mich. Comp. Laws Ann. § 451.2610(1) (similar under Michigan Blue Sky laws); Minn. Stat. § 80A.87(a) (similar under Minnesota Blue Sky laws); Miss. Code Ann. § 75-71-610 (similar under Mississippi Blue Sky laws); Mo. Rev. Stat. § 409.6-610(a) (similar under Missouri Blue Sky laws).  Defendants reserve the right to fully brief each and every state if the Court so desires.

[14]     To the extent Plaintiff's basis for pursuing the non-Wisconsin Blue Sky claims are premised on "class standing," that fails here because Plaintiff must, at a minimum, have personally stated a claim as to some cause of action in order to assert "class standing" over any other claims for which he cannot personally state a claim.  Here, for the reasons described above, Plaintiff has not adequately alleged any of the claims that he personally could pursue.  Thus, he cannot assert class standing over the non-Wisconsin Blue Sky claims. *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 106 (2d Cir. 2019) (affirming decision that question regarding ability to assert "class standing" moot where "[plaintiff] no longer had any viable claims"); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 96 n.3 (2d Cir. 2018) (recognizing that in order to have "class standing," "a district court [must] first determine that the [named] plaintiff was actually injured by each of the named defendants").

6605854, at *2 (S.D.N.Y. Dec. 17, 2018) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)). A plaintiff can establish personal jurisdiction over a defendant in two ways: "Specific jurisdiction exists when . . . [the] 'suit aris[es] out of or relate[s] to the defendant's contacts with the forum'; . . . general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum." *Met Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn.8-9 (1984)). For the reasons below, Plaintiff cannot establish personal jurisdiction—either specific or general—over any of the defendants in this action, and thus the Court should dismiss the Complaint in full.

    1.   <u>Plaintiff Fails To Establish Personal Jurisdiction Exists Over Eyal Hertzog And Yehuda Levi.</u>

With respect to Mr. Hertzog and Mr. Levi, Plaintiff has not alleged ***any*** facts that establish contact with the United States. The fact that they were high-ranking employees of Bancor is insufficient to establish personal jurisdiction. *See Blockchain Luxembourg S.A. v. Paymium, SAS*, 2019 WL 4199902, at *12-13 (S.D.N.Y. Aug. 7, 2019) (dismissing claims against French founder and CEO for lack of personal jurisdiction where complaint was "devoid of any specific allegations pertaining to" his allegedly wrongful conduct). Nor can Plaintiff establish general jurisdiction over these defendants: "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *In re Terrorist Attacks*, 714 F.3d at 674 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011)). As Mr. Hertzog and Mr. Levi both reside in Israel, 2d Am. Compl. ¶¶ 18-19, Plaintiff has failed to make a prima facie showing that the Court has personal jurisdiction over Mr. Hertzog and Mr. Levi.

2.      Plaintiff Fails To Establish Personal Jurisdiction Over Galia And Guy Benartzi.

Plaintiff also fails to make a prima facie showing that the Court has personal jurisdiction over Galia Benartzi and Guy Benartzi.  As noted above, this is clearly not the "paradigm" case for general jurisdiction, as both Benartzis reside in and are citizens of Israel.  2d Am. Compl. ¶¶ 20-21; *In re Terrorist Attacks*, 714 F.3d at 674.  Nor can Plaintiff use the allegations relating to the Benartzis' work in the United States, as "[j]urisdiction over a corporation's board member, officer or employee, in his or her individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his or her corporate capacity."  *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 471 (S.D.N.Y. 2010), *aff'd* 714 F.3d at 681 ("We hold that these allegations are insufficient for the exercise of general jurisdiction, substantially for the reasons outlined in the District Court's opinion.").  Even assuming these trips, during which the Benartzis "attended and spoke at blockchain-focused conferences, including at New York City," are attributable to Mr. Benartzi and Ms. Benartzi individually, these contacts are too attenuated to support personal jurisdiction.  *See Absolute Activist Master Value Fund, Ltd. v. Ficeto*, 2013 WL 1286170, at *12 (S.D.N.Y. Mar. 28, 2013) (holding that 3-5 "fundraising trips" to the United States were insufficient contacts to establish personal jurisdiction absent a showing that the injury was "proximately caused by those contacts" (quoting *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)).  Plaintiff has failed to allege sufficient personal contacts to make a prima facie showing that the Court has general jurisdiction over Galia and Guy Benartzi.

Nor can Plaintiff establish specific jurisdiction over the Benartzis.  To establish specific jurisdiction over the Benartzis, Plaintiff must establish that the claims "aris[e] out of or [are] related to the defendant's contacts."  *In re Terrorist Attacks*, 714 F.3d at 673-74.  But, for the reasons discussed above, Plaintiff has failed to establish that any of the actions taken within the United

22

States by Bancor or its agents were solicitations, *i.e.*, there are no claims which "arise out of" these contacts. *See Absolute Activist Master Value Fund*, 2013 WL 1286170, at *12 (holding that defendants' contacts with the forum could not support specific jurisdiction because they were not a "proximate cause[]" of plaintiffs' injury). The Court need not countenance Plaintiff's conclusory allegations that the cryptocurrency events which the Benartzis spoke at—events which were global conferences at which all major players in the industry would have been present—were for the purpose of "tout[ing] Bancor and solicit[ing] sales." 2d Am. Compl. ¶ 27; *Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 380-81 (S.D.N.Y. 2019).[15] Plaintiff has provided no "non-conclusory and fact-specific" allegations supporting its claims of personal jurisdiction. *ICO Servs., Ltd.*, 2018 WL 6605854 at *2.

This case is thus distinguishable from *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340 (S.D.N.Y. 2019). In that case, the plaintiffs had established significant contacts by the defendants with the United States which were clearly for the purpose of promoting the allegedly unregistered securities. For example, in *Balestra*, the plaintiffs "provided ample evidence," including defendants' attendance at a "conference in New York devoted to the launch of the . . . ATB Coin," and a "press release . . . boasting that the ATB Coin had already attracted excited investors ***from the United States***." 380 F. Supp. 3d at 350-51 (internal quotation marks omitted) (emphasis added). Here, all Plaintiff can muster is the allegation that the Benartzis—who are well-known individuals and thought leaders involved in the crypto-technology market—spoke at technology conferences in the United States. There is no allegation that any of the conferences attended by Defendants was devoted to BNT or the June 2017 token generating event, nor that the Benartzis specifically provided

---

[15] It bears noting that Plaintiff does not allege that these events were touting ***BNT***, the alleged unregistered security.

information or encouragement regarding the purchase of BNT.  This is a far cry from the showing
needed to establish personal jurisdiction over the Benartzis.

        3.      <u>Plaintiff Fails To Establish Personal Jurisdiction Exists Over Bancor.</u>

Plaintiff also fails to establish jurisdiction over Bancor.  To establish general jurisdiction over
a corporation, a plaintiff must show that the corporation's contacts with the forum "are *so* continuous
and systematic *as to render it essentially at home* in the forum."  *Brown v. Lockheed Martin Corp.*,
814 F.3d 619, 627 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014)).
The Second Circuit has recognized that "*Daimler* established that, except in a truly 'exceptional'
case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or
maintains its principal place of business—the 'paradigm' cases."  *Id.* (noting that several other courts
of appeal "have agreed with this reading of *Daimler*").  Bancor is neither incorporated within the
United States, nor does it maintain any place of business within this country, much less its principal
one.  And Plaintiff cannot seriously contend that its allegations—which are functionally non-existent
with respect to Bancor's contacts with the United States—render this case "exceptional."  *See id.* at
629 (holding that "not insubstantial" business in a forum, which constitutes only a subset of a
company's portfolio, fails to establish general jurisdiction); *see also Lopez v. Shopify, Inc.*, 2017 WL
2229868, at *7 (S.D.N.Y. May 23, 2017) *report and recommendation adopted*, 2018 WL 481891
(S.D.N.Y. Jan. 17, 2018) (holding that "collective contacts," including trading on the New York
Stock Exchange, having "multiple customers in New York," running several promotional events in
the state, and having a permanent office in the state, "still cannot support general jurisdiction under
*Daimler*").

Nor does Plaintiff allege any additional facts relating to Bancor beyond the acts by the
individual defendants which would be sufficient to establish jurisdiction, whether specific or general.
The Second Amended Complaint's reference to a handful of Tweets which are not alleged to be

targeted at the United States fails to justify exercising personal jurisdiction over Bancor. *See Lopez*, 2017 WL 2229868 at *5 n. 9 ("However, as discussed, Lopez does not allege that RRHustle sold any products in New York, marketed the site to New York residents, or targeted the state or its residents in any way. The Court is not satisfied that the theoretical availability of RRHustle's allegedly infringing goods to anyone with internet use in any state, including New York, means that Shopify has 'purposefully directed' its activities at New York.").

The conclusory allegations relating to the "listing agreements" with Bittrex and Poloniex, 2d Am. Compl. ¶¶ 114-20, are also red herrings. As an initial matter, the allegations that these agreements—with companies which, while based in the United States, offer crypto-assets for purchase all over the world—were made "for the purpose and effect of enabling U.S.-based investors to purchase, sell, and trade BNT," *id.* at ¶ 117, are insufficiently "non-conclusory and fact-specific" to support jurisdiction. *ICO Servs., Ltd.*, 2018 WL 6605854, at *2. But they also omit a critical allegation—that anyone in the United States ***actually purchased BNT*** via these purported contacts. *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018) (rejecting assertion of jurisdiction based on website when plaintiff could not establish any actual commercial effect on the forum from the site). In fact, the Second Amended Complaint alleges the opposite: that Bancor took stops to ***prevent*** United States transactions. *See Dareltech, LLC v. Xiaomi Inc.*, 2019 WL 3287957, at *9 (S.D.N.Y. July 22, 2019) ("Such an inference[, that defendant sought to offer products within the United States,] is even less founded because defendants have presented affirmative evidence of [their] efforts to police third party vendors and prevent the sale of unauthorized products in the United States."). Plaintiff fails to make a prima facie showing that personal jurisdiction over Bancor is proper.

4.       In The Alternative, Plaintiff Fails To Establish Personal Jurisdiction Exists With Respect To Each Blue Sky Claim From A State Other Than Wisconsin.

For specific jurisdiction, "[a] plaintiff must establish the court's jurisdiction with respect to each claim asserted." *Lopez*, 2017 WL 2229868, at *5 (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)). As noted above, Plaintiff asserts over 90 claims under various state Blue Sky laws without alleging any specific, non-conclusory facts. *See* Section II.F. Thus, at a minimum, Plaintiff has failed to establish specific jurisdiction over any defendant relating to these Blue Sky claims.

## B.       This Court Should Dismiss The Action Pursuant To The Doctrine Of *Forum Non Conveniens*.

Though Bancor contends that this Court does not have jurisdiction over the defendants in this action, the Court need not even reach the question. Even were this Court to find that it had jurisdiction over Defendants—which for the reasons detailed above, it should not—the Court should still dismiss the action without prejudice under *forum non conveniens*. "The doctrine of *forum non conveniens* permits a court to dismiss a claim even if the court is a *permissible* venue with proper jurisdiction over the claim." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998); *see also Red Rock Holdings, Ltd. v. Union Bank Trust Co., Ltd.*, 1998 WL 474094, at *1 n.1, *5 (S.D.N.Y. Aug. 11, 1998) (dismissing case against Israeli defendants pursuant to *forum non conveniens* without reaching questions of personal jurisdiction). A court analyzing whether a claim should be dismissed due to *forum non conveniens* engages in a three-step inquiry: first, the court "determine[s] the degree of deference owed to plaintiff's choice of forum," *Tagger v. Strauss Grp. Ltd.*, 2018 WL 4356725, at *4 (E.D.N.Y. Sept. 12, 2018) (citing *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003)), *aff'd*, 951 F.3d 124 (2d Cir. 2020), based "on a sliding scale depending on several relevant considerations." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001).

26

In *Iragorri*, the Second Circuit faced the circumstances this Court faces: "a United States resident plaintiff's suit in a U.S. district other than that in which the plaintiff resides." *Iragorri*, 274 F.3d at 71. Here, Holsworth—a resident of Wisconsin—filed suit in the Southern District of New York. In such circumstances, the Second Circuit instructed that:

> the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons—such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum—the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts.

*Id.* at 72.[16] And while the Second Circuit recognized that a United States resident plaintiff suing out of its state of residence might have reasons justifying deference, such as suing in a relatively close district where defendants were amenable to suit, *id.* at 72-73, there is no such justification here. Holsworth's selection of the Southern District has no justification, other than potential convenience for his attorneys, and a desire to inconvenience Defendants. *See Wilson v. Eckhaus*, 349 F. App'x 649, 651 (2d Cir. 2009) (affirming the reduced deference the district court gave to plaintiffs where "plaintiffs had sought a favorable forum by filing suit in the Southern District because the forum would . . . be less convenient and more expensive for defendants; and . . . be less favorable to defendants than Israel"). Holsworth's selection of forum is thus entitled to minimal deference.

The next step in *forum non conveniens* analysis is determining whether an adequate alternative forum exists. *Pollux Holding Ltd.*, 329 F.3d at 70. "A forum is not inadequate even if the foreign justice system differs from that of the United States." *PT United Can Co.*, 138 F.3d at 73. Indeed, United States courts, based on "considerations of comity," will not "adversely judg[e]

---

[16] Moreover, there is "no inflexible rule that protects U.S. citizen or resident plaintiffs from having their causes dismissed for *forum non conveniens*." *Pollux Holding Ltd.*, 329 F.3d at 73.

the quality of a foreign justice system absent a showing of inadequate procedural safeguards." *Id.*

"In practice, this issue entails three inquiries. Is the defendant amendable to process in the alternative forum? Is the plaintiff able to have his claims adjudicated fairly (*i.e.* is the judiciary corrupt)? . . . Can the plaintiff litigate his claims safely and with peace of mind (*i.e.* free from threats of violence and/or trauma connected with the particular claims)?" *Base Metal Trading Ltd. v. Russian Aluminum*, 98 F. App'x 47, 49-51 (2d Cir. 2004) (affirming that Russia is an "adequate forum" for *forum non conveniens* purposes). To pose these questions answers them with respect to Israel—a democratic nation with a respected and developed judiciary. *See, e.g.*, *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1077-79 (S.D.N.Y. 1992) (rejecting plaintiff's unsupported and conclusory "contention that they cannot get a fair hearing in the courts of Israel"), *aff'd*, 990 F.2d 71 (2d Cir. 1993); *Tagger*, 2018 WL 4356725 at *5; *Red Rock Holdings*, 1998 WL 474094 at *5-*6. There can be no legitimate argument that Israel would not provide an adequate forum.

The final step is balancing the so-called *Gilbert* factors, which here make clear that the Plaintiff's case should be dismissed. These factors include both private considerations, which include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Iragorri*, 274 F.3d at 73-74 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Here, as discussed above, all of the relevant witnesses and evidence is located outside of the Southern District of New York: each of the defendants is located in Israel, as would any witnesses relevant to the operation of the entity defendant, and Plaintiff is a resident of Wisconsin. *See Red Rock Holdings*, 1998 WL 474094 at *7 (dismissing a case pursuant to *forum non conveniens* where the entity defendants were located in Israel, "their employees who worked on the transactions at issue [we]re located in Israel and []

28

transporting those witnesses to New York to participate in the trial in New York would seriously inconvenience them and disrupt their ongoing business"); *Wilson*, 349 F. App'x at 652 (according great weight to fact that "the most pertinent documentary and testimonial evidence exists in Israel").

Courts also balance "public factors," which include "[a]dministrative difficulties" which arise "when litigation is piled up in congested centers instead of being handled at its origin." *Iragorri*, 274 F.3d at 74 (quoting *Gilbert*, 330 U.S. at 508-09). This factor also weighs in favor of a dismissal here—Bancor's offices are located in Switzerland and Israel. 2d Am. Compl. ¶ 17. And, as the Plaintiff admits, Bancor took further steps to bar individuals in the United States from purchasing BNT in July of 2019. *Id.* at ¶ 27.[17] This litigation did not originate here and it does not belong here.

In sum, Plaintiff's choice of forum—motivated as it apparently was for purposes related to the convenience of Plaintiff's counsel and the desire to render defense so onerous for Defendants that they are intimidated into premature settlement of unavailing claims—does not outweigh the substantial inconvenience to both Defendants and the Court by litigating this case in the Southern District as opposed to the plainly adequate forum of Israel. This case should thus be dismissed pursuant to *forum non conveniens*.

## CONCLUSION

The Complaint should be dismissed with prejudice, on the merits or, in the alternative, without prejudice due to Plaintiff's lack of standing, lack of personal jurisdiction over Defendants, or pursuant to the doctrine of *forum non conveniens*.

---

[17]  Plaintiff tactically omitted facts regarding all the steps which Defendants took prior to the June 2017 token generating event to prevent individuals in the United States from purchasing BNT.

Dated:  October 13, 2020
       New York, New York

                         QUINN EMANUEL URQUHART &
                         SULLIVAN, LLP

                         By: /s/ *Alex Spiro*
                         Alex Spiro
                         Justin Giles
                         51 Madison Avenue, 22nd Floor
                         New York, New York 10010
                         (212) 849-7000

                         Tyler Whitmer
                         1300 I St. NW #900
                         Washington, DC 200005
                         (202) 538-8000

                         Emily Kapur (*pro hac vice*)
                         555 Twin Dolphin Drive #560
                         Redwood City, CA 94065
                         (650) 801-5000

                         *Attorneys for Defendants BProtocol Foundation,*
                         *Eyal Hertzog, Yehuda Levi, Guy Benartzi, and*
                         *Galia Benartzi.*